COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Malveaux
Argued at Salem, Virginia

ORBIN DEWAYNE BLEDSOE

v.      Record No. 1835-16-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
JUNE 5, 2018

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Clark A. Ritchie, Judge

J. Ryan King (Cook Attorneys, PC, on briefs), for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Orbin Dewayne Bledsoe (appellant) appeals his conviction, arguing that the trial court

erred in denying his motion to strike. Appellant specifically contends that the trial court

incorrectly interpreted the term "highway," and, consequently, the evidence was insufficient to

sustain a conviction. We disagree with appellant's contention and find that the evidence was

sufficient to justify the conviction.

BACKGROUND

Officer Ron Jackson (Jackson) is employed as a law enforcement officer for the United

States Department of Agriculture, Forest Service. On April 11, 2015, Jackson was driving on

Road #1279 in the George Washington National Forest, located in the Commonwealth of

Virginia. At approximately 6:30 p.m., Jackson observed a Jeep Cherokee (Jeep) in a campsite.

The campsite could only be entered via the gravel road adjacent to Road #1279. Carsonite posts

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

with a pictograph of a tent were posted beyond the graveled road, indicating that this was a campsite. The boundaries of the campsite were marked by an earthen berm and wooded forest. Jackson then noticed the Jeep being driven out of the campsite and onto the gravel road. Jackson drove toward the campsite and pulled alongside the Jeep; the vehicles faced opposite directions. Jackson noted that appellant was the driver of the Jeep. Jackson asked appellant if he had his driver's license. Appellant stated that he did not. At that point, Jackson exited his vehicle and approached appellant. As he stood by the driver's side window, Jackson had a clear view of the interior of the Jeep; he noticed there were other passengers but that there was no camping equipment. Jackson then asked appellant if his license was suspended. Appellant admitted it was and handed Jackson a Virginia identification card. Jackson indicated that when appellant gave him his Virginia identification card, Jackson suspected, based upon past experiences in law enforcement and because he was presented an identification card, that appellant's license was suspended.

At trial, Jackson testified to the events described above. Jackson testified that there was an issue with unauthorized motor vehicle traffic in the national forest. Jackson stated that the Carsonite posts, earthen berm, and gravel road were preventative tools used to combat the issue. The adjacent road, which operated as the entrance to the campsite, was also graveled to prevent ruts and erosion. Finally, the Commonwealth introduced appellant's Department of Motor Vehicles' transcript, establishing that appellant was an habitual offender.

At the conclusion of the Commonwealth's case, appellant made a motion to strike, arguing that the Commonwealth did not prove that appellant was driving on "a highway of the Commonwealth." Although this property is land "owned, leased or controlled by the United States Government and located in the Commonwealth," appellant argued that the definition of "highway" was "the width between the boundary lines of every way or place open to the use of

the public for purposes of vehicular travel." In addition, appellant argued that this was not a case about boundary lines; rather, this was a case about an area that "does not come within the statutory definition of a way open for the purposes of vehicular travel" because it was a "campsite." The Commonwealth replied that the definition of a "highway" on federal land in the Commonwealth is an area "between the boundary lines of every way or place used for the purposes of vehicular travel." The trial court denied appellant's motion to strike, agreeing with the Commonwealth's reading of the statute.

Appellant presented his case in chief, calling Jackson as a witness. The exact location of the Jeep was disputed, but Jackson remembered that there was gravel at the location where he came to a stop and began interacting with appellant. The map of the national forest was admitted, indicating which roads were designated for motor vehicle use. Appellant then called his private investigator. The private investigator discussed photographs he took of the campsite, which were admitted into evidence. Based on those photographs, the private investigator testified that it appeared vehicles had been "driv[en] through that area," agreed that it looked as if vehicles drove regularly around the center of the campsite, and saw ruts in that worn path.



Appellant renewed his motion to strike. He argued that the issue before the trial court was whether this area is "open to the public for purposes of vehicular travel" and that the evidence made clear that it was not. During the argument on the appellant's motion to strike, the trial court suggested that the case might turn on whether the area in question was used for vehicular travel. Appellant responded that "the simple operation of motor vehicles certainly does not indicate that [the area] is open to the public for the purposes of vehicular travel." The Commonwealth argued that the issue before the trial court was whether the "area is used for vehicular travel," and the evidence showed that vehicles were driven in the campsite regularly. The trial court denied the motion, stating again that the Commonwealth's evidence survived a motion to strike and that the evidence indicated that there "could be off[-]highway vehicle use on the property."

The jury convicted appellant of "driving after being declared a habitual offender, second offense" and recommended a sentence of four years' imprisonment.

Appellant filed a motion to set aside the verdict, and the Commonwealth responded on the same grounds before this Court on appeal. The trial court declined to set aside the verdict. The trial court stated that there was a statute prohibiting habitual offenders from driving on highways and another statute defining what a "highway" is. The trial court stated that the question then becomes "[d]id [appellant] . . . operat[e] the vehicle on a highway at that moment and in the alternative could the jury have found circumstantially that if he was operating a vehicle at some time before that in the form of actually being on that property at that time."

The trial court entered its sentencing order which was consistent with the jury's verdict.

Now comes this appeal.

ANALYSIS

"We review appellant's challenge to the trial court's denial of his motion to strike under familiar principles. In the context of a jury trial, a trial court does 'not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a *prima facie* case for consideration by the fact finder.'" Vay v. Commonwealth, 67 Va. App. 236, 249, 795 S.E.2d 495, 501 (2017) (quoting Hawkins v. Commonwealth, 64 Va. App. 650, 657, 770 S.E.2d 787, 790 (2015)).

> A motion to strike challenges whether the evidence is sufficient to submit the case to the jury. What the elements of the offense are is a question of law that we review *de novo*. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong. In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom. After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. (quoting Linnon v. Commonwealth, 287 Va. 92, 98, 752 S.E.2d 822, 825-26 (2014)).

Questions of statutory interpretation are reviewed *de novo*. Sarafin v. Commonwealth, 288 Va. 320, 325, 764 S.E.2d 71, 74 (2014) (citing Belew v. Commonwealth, 284 Va. 173, 177, 726 S.E.2d 257, 259 (2012)). "In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature." Saunders v. Commonwealth, 48 Va. App. 196, 201, 629 S.E.2d 701, 703 (2006) (quoting Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997)). "That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction or parol evidence, unless a literal application would produce a meaningless or absurd result." Id. "[T]he provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003).

First, we consider the text of the statute. Appellant was charged with a violation of Code § 46.2-357. That statute states in pertinent part that "[i]t shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle or self-propelled machinery or equipment on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect." Code § 46.2-357(A). Appellant argues that he was not driving on a "highway." The legislature defined the term in Code § 46.2-100. A "highway" is

> the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, *and*, for law-enforcement purposes, (i) the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located *and* (ii) *the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.*

Code § 46.2-100 (emphasis added).

Appellant asserts that the location where Jackson observed him driving was not a "highway." Appellant contends that a "highway" is "the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys." Code § 46.2-100. Thus, according to appellant, the location where Jackson observed appellant driving was not a "highway" but rather a "campsite." Appellant cites Kim v. Commonwealth, 293 Va. 304, 315, 797 S.E.2d 766, 771-72 (2017), to support his interpretation of the statute. There, Kim was found asleep in his vehicle, which was parked "somewhat diagonally" in a space in a parking lot of an apartment complex. Id. at 308, 797 S.E.2d at 767. Kim was arrested "on suspicion for drunk driving." Id. at 308, 797 S.E.2d at 768. He was ultimately convicted of unreasonable refusal to submit a breath

sample. Id. at 310, 797 S.E.2d at 769.  At trial and on appeal, Kim argued that he not was parked on a "highway." Id.  The specific inquiry before the Virginia Supreme Court was "whether a particular 'way' [fell] within the statutory definition of 'highway.'" Id. at 312, 797 S.E.2d at 770.

The Virginia Supreme Court turned to its decision in Prillaman v. Commonwealth, 199 Va. 401, 100 S.E.2d 4 (1957), for guidance.  In Prillaman, a parking lot of a service station was found not to be a "highway" because the business owner "could . . . bar the public or any person from vehicular travel on all or any part of his premises"; "the right of travel by everyone and not the exercise of that right establishes a way a public highway." Kim, 293 Va. at 312, 797 S.E.2d at 770 (quoting Prillaman, 199 Va. at 407-08, 100 S.E.2d at 8-9).  Here, as in Kim, the case turned on the following question: "'whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel.'"[1] Id. at 315, 797 S.E.2d at 771 (quoting Caplan v. Bogard, 264 Va. 219, 227, 563 S.E.2d 719, 724 (2002) (noting that it must be shown that there is "unrestricted access" to the way)).

_____

[1] Kim, 293 Va. 304, 797 S.E.2d 766 (finding that the presence of "No Trespassing" signs at each entrance to an apartment complex and throughout the complex indicated that the area was not open to the use of the public, and thus not a "highway"); Kay Management Co. v. Creason, 220 Va. 820, 263 S.E.2d 394 (1980) (noting that privately owned and maintained streets of an apartment complex were "highways" because there was no evidence that the use of or access to these ways were restricted); Furman v. Call, 234 Va. 437, 362 S.E.2d 709 (1987) (indicating that a parking area of a condominium office complex was a "highway" even though signs were posted at each entry which stated "Private Property, No Soliciting"-these signs prohibited soliciting, not the entry of motor vehicles); Flinchum v. Commonwealth, 24 Va. App. 734, 737-38, 485 S.E.2d 630, 631 (1997) (stating that parking lots of a sporting goods store were not "highways" because signs on the property stated "No Trespassing," which does prohibit the entry of motor vehicles, and the business owners could "bar the public or any person from vehicular travel on all or any part of [their] premises at will"); Roberts v. Commonwealth, 28 Va. App. 401, 504 S.E.2d 890 (1998) (finding that a parking lot of a convenience store was not a "highway" because it was known that the store's manager had the authority to and had previously asked individuals to leave the premises); Caplan v. Bogard, 264 Va. 219, 228, 563 S.E.2d 719, 724 (2002) (finding that a parking lot of a restaurant was not a "highway"-the record reflected that there was no physical barrier preventing entry, but this was insufficient to demonstrate that the public had "free and unrestricted access and use of the roadways").

Kim is inapposite. The distinguishing factor in appellant's case is the particular location where he was observed to be driving—a national forest located within the Commonwealth. There is a significant difference between the general definition and the more specific definitions of "highway" set forth in subparts (i) and (ii) of the statute. The General Assembly appended subparts (i) and (ii) onto the more general definition of the term using the conjunction "and." Because there is no indication that this conjunctive term should be read in the disjunctive, see Williams v. Commonwealth, 61 Va. App. 1, 10-11, 733 S.E.2d 124, 128 (2012) (quoting S. E. Pub. Serv. Corp. v. Commonwealth, 165 Va. 116, 122, 181 S.E. 448, 450 (1935)), it is clear that the General Assembly provided three definitions of "highway"—one general definition and two specific definitions.[2] Code § 46.2-100(i) and (ii). As this location constitutes "any property owned, leased, or controlled by the United States government and located in the Commonwealth," the more specific subpart (ii) definition of "highway" applies. Code § 46.2-100(ii). We note "[a] cardinal rule of statutory interpretation is that '[w]hen one statute addresses a subject in a general manner and another addresses a part of the same subject in a more specific manner, the two statutes should be harmonized, if possible, and when they conflict,

_____

[2] The General Assembly amended the definition of "highway" in 2006 by inserting the content of subpart (ii). See Bill Summary as Introduced, H.B. 496, 2006 Sess., (Va. 2006), http://lis.virginia.gov/cgi-bin/legp604.exe?061+sum+HB496S. United States v. Slagle, 2015 U.S. Dist. LEXIS 136059 (D. Md. 2015), provides additional insight. Slagle suggests that the General Assembly amended the definition "in the wake of the Fourth Circuit's decisions in Smith and Adams." Id. at *9. The legislature in Maryland amended the definition of "highway" to include language similar to Code § 46.2-100(ii) in response to cases citing United States v. Smith, 395 F.3d 516 (4th Cir. 2005), and United States v. Adams, 426 F.3d 730 (4th Cir. 2005). Id. at *3. Smith and Adams dealt with individuals on federal lands that were determined not to be "highways" because they were "not open to the public." See Smith, 395 F.3d 516 (noting that an access road in front of the main entrance of CIA headquarters was not a "highway" because posted signs stated "only CIA employees and those with authorized business may enter CIA property"), and Adams, 426 F.3d 730 (noting that a gravel road in the Great Dismal Swamp National Wildlife refuge was not a "highway" because there were signs posted "prohibiting 'unauthorized entry,'" federal agents patrolled the closed roads, and press releases were issued noting that the road was closed).

the more specific statute prevails.'" Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 481, 666 S.E.2d 361, 369 (2008) (quoting All. to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 439-40, 621 S.E.2d 78, 87 (2005)). "[W]e must presume that the difference in the choice of language was intentional." Sarafin, 288 Va. at 328, 764 S.E.2d at 76 (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011)). Thus, the subpart (ii) definition applies.

Regarding whether the evidence was sufficient, we consider the evidence in the light most favorable to the Commonwealth. Vay, 67 Va. App. at 249, 795 S.E.2d at 501. We note that appellant concedes his habitual offender status and that he was driving on a suspended license. Accordingly, the only element of the offense at issue was whether appellant was driving on a "highway." Pursuant to our analysis above, subpart (ii) applies. Accordingly, the Commonwealth must prove that the "the entire width between the boundary lines of every way or place [was] used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth." Code § 46.2-100(ii). Considering the test articulated in Kim, the test regarding whether a way or place on federal land situated in the Commonwealth is a "highway" is whether the "way or place" is "used for purposes of vehicular travel." Code § 46.2-100(ii).

The "way or place" at issue is located on federal land, the George Washington National Forest, situated within the Commonwealth. Evidence established that the area was "used for purposes of vehicular travel." Jackson testified that historically, there was an issue of unauthorized motor vehicle use in the national forest, explaining the installation of the earthen berm, Carsonite posts, and graveled access road. Witnesses testified and photographs reflected that it appeared that motor vehicles were regularly driven around the campsite. There was a worn path around the center of the campsite riddled with ruts. Jackson observed appellant

driving his Jeep in the campsite and onto the gravel access road. The Commonwealth's evidence was sufficient to prove appellant's guilt beyond a reasonable doubt.

CONCLUSION

The trial court did not err in denying appellant's motion to strike. A "highway," in this case, is defined pursuant to subpart (ii) of Code § 46.2-100. Accordingly, and in the light most favorable to the Commonwealth on this appeal, the evidence adduced at trial was sufficient to prove each of those elements of the offense, and the fact-finder's finding of guilt was not plainly wrong.

<u>Affirmed.</u>